JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 22-2011 JGB (SPx)** | Date | September 26, 2023 |
|---|---|---|---|
| Title | *Curtis J. Barlows v. Tim Nguyen, DBA Pho 77 Vietnamese Noodle and Grill* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   Order (1) GRANTING Plaintiff's Application for Default Judgment (Dkt. No. 14); and (2) VACATING the October 2, 2023 Hearing (IN CHAMBERS)

Before the Court is an application for default judgment against Tim Nguyen, doing business as Pho 77 Vietnamese Noodle and Grill ("Nguyen" or "Defendant") filed by Plaintiff Curtis J. Barlows. ("Application," Dkt. No. 14.) The Court finds this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of the Motion, the Court **GRANTS** the Application. The October 2, 2023 hearing is **VACATED**.

## I.   BACKGROUND

On November 14, 2022, Plaintiff filed his complaint against Defendant, alleging that an employee of Defendant's restaurant discriminated against Plaintiff by not allowing him to enter with his service animal in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. ("ADA"), the California Disabled Persons Act, California Civil Code § 54 et seq. ("CDPA"), and the Unruh Civil Rights Act, California Civil Code § 51 et seq. ("Complaint," Dkt. No. 1.) On December 12, 2022, Plaintiff filed a proof of service upon Defendant. ("Proof of Service," Dkt. No. 10.) Defendant did not file a responsive pleading.

On January 16, 2023, Plaintiff filed a request for the Clerk to enter default against Defendant. ("Default Request," Dkt. No. 11.) On January 17, 2023, the Clerk entered default. ("Entry of Default," Dkt. No. 12.)

On August 1, 2023, the Court issued an Order to Show Cause why the action should not be dismissed for lack of prosecution due to Plaintiff's failure to apply for default judgment against Defendant. ("OSC," Dkt. No. 13.) On August 9, 2023, Plaintiff filed a response to the OSC and the instant application for default judgment. (Dkt. Nos. 14–15.) The Court thus discharged the OSC. (Dkt. No. 16.)

In support of his Application, Plaintiff filed the following:

- Declaration of Bryce Fick ("Fick Declaration," Dkt. No. 14-2);
- Declaration of Richard Morin ("Morin Declaration," Dkt. No. 14-3);
- Declaration of Plaintiff Curtis J. Barlows ("Plaintiff Declaration," Dkt. No. 14-4);
- Copy of the email received by counsel from Servicemembers Civil Relief Act Centralized Verification Service ("Exhibit 1," Dkt. No. 14-5);
- Copy of the order summary that was pdf-printed from the Servicemembers Civil Relief Act Centralized Verification Service's website ("Exhibit 2," Dkt. No. 14-6);
- Copy of the California Alcoholic Beverage Control website page associated with Defendant's business, accessed on or about October 18, 2022 ("Exhibit 3," Dkt. No. 14-7);
- Copy of counsel's billing statement for work performed in connection with this matter ("Exhibit 4," Dkt. No. 14-8).

Plaintiff also filed a proof of service with his Application. ("Application Proof of Service," Dkt. No. 14-10.) Defendant does not oppose the Application.

## II.     LEGAL STANDARD

Entry of default is appropriate "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend[.]" Fed. R. Civ. P. 55(a). A party has no duty to defend, however, unless the plaintiff properly served the defendant with the summons and complaint, or waives such service, pursuant to Federal Rule of Civil Procedure 4. See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 350 (1999) ("one becomes a party officially, and is required to take action in that capacity, only upon service of a summons"). Pursuant to Federal Rule of Civil Procedure 55(b), a court may order default judgment following the entry of default by the Clerk of the Court. Fed. R. Civ. P. 55(b).

In the Central District of California, a plaintiff seeking default judgment must also satisfy Local Rule 55-1, which requires that an application to the Court for default judgment must be accompanied by a declaration that conforms to the requirements of Federal Rule of Civil Procedure 55(b) and includes the following information:

> (1) when and against which party the default was entered; (2) the identification of the pleading to which default was entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether that person is adequately represented; (4) that

> the Servicemembers Relief Act does not apply; and (5) that notice
> of the application has been served on the defaulting party, if
> required.

L.R. 55-1.

Entry of a defendant's default does not automatically entitle the plaintiff to a court-ordered judgment. See Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986). Instead, district courts are accorded wide discretion as to whether to enter default judgment. See Aldabe v. Aldabe, 616 F.2d 1089, 1092-93 (9th Cir. 1980). In Eitel v. McCool, 782 F.2d 1470 (9th Cir. 1986), the Ninth Circuit set forth the following factors for consideration in determining whether to grant default judgment:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of
> plaintiff's substantive claim; (3) the sufficiency of the complaint;
> (4) the sum of money at stake in the action; (5) the possibility of a
> dispute concerning material facts; (6) whether the default was due
> to excusable neglect; and (7) the strong policy underlying the
> Federal Rules of Civil Procedure favoring decisions on the merits.

Id. at 1471–72 ("Eitel factors").

Upon entry of default, the well-pleaded factual allegations of a complaint are deemed true; however, allegations pertaining to the amount of damages must be proven. TeleVideo Sys. Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir. 1987); see also DirecTV, Inc. v. Huynh, 503 F.3d 847, 854 (9th Cir. 2007); Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977). To obtain a default judgment, a plaintiff must provide evidence of damages, and a court may rely only on the evidence submitted by the plaintiff or on evidence offered during a full evidentiary hearing, if ordered by the Court. See Fed. R. Civ. P. 55(b)(2). Further, the relief sought, including damages, must not "differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). When a promissory note, contract or applicable statute provides for the recovery of attorneys' fees, Local Rule 55-3 provides a schedule of attorneys' fees to be awarded a plaintiff entitled to default judgment. See L.R. 55-3.

### III.   DISCUSSION

Plaintiff requests that the Court enter default judgment against Defendant. Plaintiff seeks to recover $8,000 in statutory damages for unlawful discrimination under the Unruh Civil Rights Act. (See Application at 1.) Plaintiff also seeks a permanent injunction against Defendant and attorneys' fees and costs under the ADA. (See id.) For default judgment to be entered against Defendant, Plaintiff must meet the procedural requirements described above and establish that, on balance, the Eitel factors weigh in his favor. The Court evaluates these factors below.

//

### A. Procedural Requirements

Plaintiff has satisfied the procedural requirements for entry of default judgment. Pursuant to Federal Rule of Civil Procedure 55, Plaintiff petitioned for default judgment after default was entered against Defendant by the Clerk. (See Default Request; Entry of Default; Application.) Here, entry of default was appropriate because Defendant failed to respond to the Complaint, which was properly served upon him. (See Application at 2; Proof of Service.)

Additionally, Plaintiff's Application and accompanying declarations set forth the information required by the Local Rules of this Court. (See Motion at 5; Morin Declaration ¶¶ 2–9.) Thus, Plaintiff has complied with the applicable Local Rules and Federal Rules.

### B. Eitel Factors

#### 1. Possibility of Prejudice to Plaintiff

Plaintiff would suffer prejudice if the Court does not enter default judgment. Because Defendant has not participated in the litigation since its inception ten months ago, a default judgment is the only means by which Plaintiff may recover. Absent a default judgment, Defendant will have avoided liability simply by not defending against Plaintiff's action. This factor thus weighs in favor of default judgment. See Vogel v. Rite Aid Corp., 992 F. Supp. 2d 998, 1007 (C.D. Cal. 2014) (finding the plaintiff would suffer prejudice absent entry of a default judgment because of the defendant's unwillingness to cooperate and defend against the claim).

#### 2. Substantive Merits of Plaintiff's Claims and Sufficiency of the Complaint

The second and third Eitel factors concern the merits of Plaintiff's substantive claims and the sufficiency of the Complaint. Eitel, 782 F.2d at 1471-72. "The Ninth Circuit has suggested that these two factors require that a plaintiff 'state a claim on which the [plaintiff] may recover.'" PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002) (internal citation omitted); see also Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978).

Plaintiff's first cause of action is for disability discrimination against an individual in a place of public accommodation in violation of the ADA. (See Complaint.) To prevail on this cause of action, Plaintiff must show that "(1) []he is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of h[is] disability." Molski v. M.J. Cable, Inc., 481 F.3d 724, 730 (9th Cir. 2007) (citing 42 U.S.C. §§ 12182(a)–(b)). The Ninth Circuit has described the applicability of the ADA's public accommodations disability discrimination provisions to the use of service animals as follows:

> Title III of the ADA establishes that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods,

services, facilities, privileges, advantages, or accommodations of any place of public accommodation...." 42 U.S.C. § 12182(a). "Discrimination" is defined as, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities...." 42 U.S.C. § 12182(b)(2)(A)(ii). The Department of Justice has issued regulations stating that, "[g]enerally, a public accommodation shall modify policies, practices, or procedures to permit the use of a service animal by an individual with a disability." 28 C.F.R. § 36.302(c)(1). By this regulation the Department of Justice intended that "the broadest feasible access be provided to service animals in all places of public accommodation ...." 28 C.F.R. Pt. 36, App. B at 697.

Lentini v. California Ctr. for the Arts, Escondido, 370 F.3d 837, 843 (9th Cir. 2004).

Plaintiff's second cause of action is for denial of full and equal access to public facilities in a public accommodation in violation of the CDPA. (See Complaint.) That statute provides: "[i]ndividuals with disabilities or medical conditions have the same right as the general public to the full and free use of the streets, highways, sidewalks, walkways, public buildings, medical facilities, including hospitals, clinics, and physicians' offices, public facilities, and other public places." Cal. Civ. Code § 54(a). To succeed on this claim, a plaintiff must establish that he was denied equal access from a place of public accommodation on a particular occasion. Gillette v. Stater Bros. Markets, 2020 WL 8479500, at *7 (C.D. Cal. Dec. 21, 2020) (internal quotations omitted).

Plaintiff's third cause of action is for discriminatory treatment on the basis of Plaintiff's disabilities under the Unruh Civil Rights Act, which is premised on Plaintiff's ADA claim. (See Complaint.) By statute, if Plaintiff alleges facts establishing an ADA violation, he has also alleged a violation of the Unruh Civil Rights Act. See Glasby v. Mercy Hous., Inc., 2017 WL 4808634, at *3 (N.D. Cal. Oct. 25, 2017). Indeed, the respective inquiries under all three of Plaintiff's causes of action are essentially the same. See Lammey v. Glenn Valley Inn, LLC, 2021 WL 4464194, at *5 (C.D. Cal. July 23, 2021) ("Under California law, an ADA violation constitutes a violation of the Unruh Act and a violation of the Disabled Persons Act.").

In support of his three claims, Plaintiff alleges as follows. Plaintiff is disabled and suffers from post-traumatic stress disorder and mobility issues which limit his major life activities. (Complaint ¶¶ 6-9.) Plaintiff uses a service animal—a dog—that is trained to help address the challenges associated with Plaintiff's disability, such as by assisting Plaintiff by retrieving medications and prosthetics, and by steadying Plaintiff. (Id. ¶¶ 10-11.) On October 18, 2022, Plaintiff visited a restaurant called Pho 77 Vietnamese Noodle and Grill ("Pho 77"), owned by Defendant Tim Nguyen, with his service dog. (Id. ¶¶ 2, 12.) Pho 77 is a restaurant which serves food and drink and is a public accommodation. (Id. ¶¶ 23-24.) When Plaintiff entered the store to purchase food, an employee "emphatically told Plaintiff that no dogs were allowed." (Id. ¶

13.) Plaintiff tried to tell the employee that his dog was a working service animal, but the employee nonetheless insisted that Plaintiff leave the restaurant immediately, and Plaintiff did so. (Id. ¶¶ 13-16.) The employee did not ask Plaintiff whether his dog was a service animal, and instead yelled "no, no, no" and insisted Plaintiff leave the property. (Id. ¶¶ 18-19.) Plaintiff indicates that he would like to return to the Pho 77 but is deterred from doing so because of Defendant's policy regarding service animals. (Id. ¶ 38.)

Plaintiff has adequately alleged that he was discriminated against in violation of the ADA. Taking the pleaded facts as true, Defendant's place of business is a public accommodation subject to the ADA. See 42 U.S.C. § 12181(7)(B). Plaintiff is a disabled person protected by the ADA, and his dog qualifies as a service animal under the relevant ADA regulation. See 42 U.S.C. § 12102(1); 28 C.F.R. § 36.104 ("Service animal means any dog that is individually trained to do work or perform tasks for the benefit of an individual with a disability."). Refusing access to a service animal can violate the ADA, as Plaintiff alleges here. See Lentini, 370 F.3d at 844–46. And as discussed above, violations of the ADA constitute violations of both the California Disabled Persons Act and the Unruh Civil Rights Act. See Lammey, 2021 WL 4464194, at *5. Accordingly, Plaintiff has stated viable claims under all three causes of action. The second and third Eitel factors thus favor default judgment.

### 3. Sum of Money at Stake

The fourth Eitel factor examines the amount of money at stake in the action relative to the gravity of the defendant's conduct. PepsiCo, 238 F. Supp. 2d at 1176. Plaintiff seeks a total monetary judgment of $8,000, plus $6,000 in attorneys' fees and $566.13 in costs, for a total of $14,566.13. (Application at 7.) This amount does not "represent a sum so large that default judgment would be disfavored." Trustees of S. California IBEW-NECA Pension Plan v. Alarm Tech Sec. Sys., Inc., 2008 WL 4196627, at *4 (C.D. Cal. Sept. 8, 2008). Indeed, similar damages awards have been described as "relatively small" in other default judgment cases. See Johnson v. Huynh, 2009 WL 2777021, *2 (E.D. Cal. Aug. 27, 2009). Courts frequently grant default judgment in ADA cases and impose similar financial liabilities on the defaulting party. See, e.g., Moore v. Cisneros, 2012 WL 6523017, *4 (E.D. Cal. Dec. 13, 2012) (awarding a total of $10,119.70); Filardi v. Starbucks # 8709, 2018 WL 3303316, at *5 (C.D. Cal. July 5, 2018) (awarding a total of $12,796). As such, the fourth Eitel factor favors default judgment.

### 4. Possibility of Dispute Concerning Material Facts

Upon entry of default, all well-pleaded factual allegations are deemed true, except those pertaining to damages. TeleVideo, 826 F.2d at 917; see also Elektra Entm't Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. Feb. 11, 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default . . . there is no likelihood that any genuine issue of material fact exists."). Defendant failed to respond to the Complaint. As such, it is unlikely that disputes as to material facts will arise. See Carbon Chemistry Ltd. v.

Banoun, 2021 WL 4437508, at *4 (C.D. Cal. July 29, 2021) ("Plaintiff has provided the Court with well-pleaded allegations and Defendant with ample opportunity to defend against them. Therefore, the Court finds that this factor weighs in favor of granting default judgment."). Nor is a dispute likely to arise with respect to damages, as the sum is statutorily authorized. See Filardi, 2018 WL 3303316, at *5. The Court finds this factor weighs in favor of granting the Application.

### 5. Whether Default Was Due to Excusable Neglect

Under the sixth factor, the court must consider whether a defendant's default may have been due to excusable neglect. Eitel, 782 F.2d at 1472. This factor favors default judgment where the defendant has been properly served or the plaintiff demonstrates the defendant is aware of the action. Wecosign, Inc. v. IFG Holdings, Inc., 845 F. Supp. 2d 1072, 1082 (C.D. Cal. Jan. 23, 2012).

Plaintiff has served the Complaint and the Application upon Defendant through substituted service at his place of business. (See Dkt. Nos. 10, 14-10.) Substituted service is generally proper in California, and thus in federal court. See Fed. R. Civ. P. 4(e)(1) (providing for service "pursuant to the law of the state in which the district court is located"); Cal. Code Civ. Proc. § 415.20(a). As a result, the Court concludes that Defendant's default was not the product of excusable neglect. This factor thus favors entry of default judgment.

### 6. Policy Favoring Decision on the Merits

"The final Eitel factor examines whether the strong policy favoring deciding cases on the merits prevents a court from entering default judgment." Craigslist, Inc. v. Naturemarket, Inc., 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010). Generally, default judgments are disfavored because "[c]ases should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472 (citing Pena v. Seguros La Comercial, S.A., 770 F.2d 811, 814 (9th Cir. 1985)). But a defendant's failure to appear or otherwise defend an action "makes a decision on the merits impractical, if not impossible," and thus "termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action." PepsiCo, 238 F. Supp. 2d at 1177; see also Wecosign, 845 F. Supp. 2d at 1083. Here, Defendant's failure to defend against this action renders a decision on the merits impracticable. The final factor thus weighs in favor of default judgment.

The Eitel factors clearly weigh in favor of default judgment against Defendant. Thus, the Court **GRANTS** the Application.

### C. Requested Relief

Next, the Court examines whether Plaintiff is entitled to the relief requested. Rule 54(c) provides that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). While a Court may accept facts as alleged in

the pleadings, a plaintiff must submit evidence to prove the amount of damages.  See Provision Interactive Techs., Inc. v. Prosperity Investments, LLC, 2019 WL 6729677, at *4 (C.D. Cal. July 19, 2019) ("To recover damages after securing a default judgment, a plaintiff must prove the relief it seeks through testimony or written affidavit.") (internal quotations omitted).

Plaintiff seeks $8,000 in statutory damages, attorneys' fees, and an injunction requiring Defendant "to establish and follow a policy that prohibits unlawful discrimination."  (See Application at 7, 10.)  Plaintiff prayed for each of these forms of relief in his Complaint and made clear that he sought "at least a statutory minimum of $4,000 for each offense."  (See Complaint at 7–8.)  It is immaterial that the Complaint does not state the exact amount of damages Plaintiff now seeks by default judgment, as Defendant was on reasonable notice of what was on stake should he fail to defend himself against the action.  See Anunciation v. W. Capital Fin. Servs. Corp., 97 F.3d 1458 (9th Cir. 1996) ("General allegations of damages in a prayer for relief are sufficient to support a default judgment under Rule 54(c), as long as the defendant is given reasonable notice thereby of the potential amount at stake."); Ames v. STAT Fire Suppression, Inc., 227 F.R.D. 361, 362 (E.D.N.Y. 2005) ("Although Rule 54(c) limits the damages recoverable by a plaintiff following a default judgment to the type and quantity of damages demanded in the complaint, it does not require plaintiff to have demanded a sum certain in order to recover on default.").  As such, the relief requested by Plaintiff here does not "differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).

The Court assesses the propriety of awarding each of these forms of relief below.

1. **Statutory Damages**

The Unruh Civil Rights Act allows for statutory damages of at least $4,000 "based on each particular occasion that the plaintiff was denied full and equal access" to a place of public accommodation.  Cal. Civ. Code § 55.56 (f); see id. § 52(a).  The Ninth Circuit has held that the right to recover under the Unruh Civil Rights Act extends to instances in which the plaintiff was denied full and equal access and to separate incidents of deterrence, meaning a disabled plaintiff can also recover the statutory minimum each time a defendant's noncompliance with the ADA and Unruh Civil Rights Act deterred him from visiting a particular establishment.  See Lentini, 370 F.3d 837, 847 (9th Cir. 2004) (citing Botosan v. Fitzhugh, 13 F. Supp. 2d 1047, 1051–52 (S.D. Cal. 1998).  In his declaration, Plaintiff avers that (1) he was denied full and equal access to Defendant's restaurant due to the presence of his service animal, and (2) that he avoided returning to Defendant's restaurant because he expected he would be discriminated against due to his need for a service animal.  (Barlows Decl. ¶¶ 1–11.)  Plaintiff seeks $4,000 in statutory damages for the instance of discrimination and another $4,000 for the deterrence, for a total of $8,000.  (Application at 7.)  As explained above, courts often impose similar financial liabilities on defaulting parties.  See, e.g., Filardi, 2018 WL 3303316, at *5 (statutory damages of $8,000 for initial discrimination and subsequent deterrence).  As such, the Court **GRANTS** Plaintiff $8,000 in statutory damages.

//

2. **Injunctive Relief**

The ADA, CDPA, and Unruh Civil Rights Act all authorize injunctive relief as a remedy. See 42 U.S.C. § 12188 (ADA); Cal. Civ. Code § 55 (CDPA); Cal. Civ. Code § 52(c)(3) (Unruh Civil Rights Act). The ADA specifically allows courts to grant equitable relief to the extent required to make facilities accessible to individuals with disabilities. See 42 U.S.C. § 12188(b)(2). Plaintiff's requested injunction is rather vague; he asks that the court "enjoin Defendant to establish and follow a policy that prohibits unlawful discrimination." (Application at 10.) But "an injunction must be narrowly tailored to remedy only the specific harms shown by a plaintiff, rather than to enjoin all possible breaches of the law." Ascencio v. ADRU Corp., 2014 WL 204212, at *9 (N.D. Cal. Jan. 6, 2014) (citing Price v. City of Stockton, 390 F.3d 1105, 1117 (9th Cir. 2004); Iconix, Inc. v. Tokuda, 457 F. Supp. 2d 969, 998 (N.D. Cal. 2006)).

The Court finds that an injunction is appropriate here, but Plaintiff's proposed injunction is both vague and overbroad. An injunction establishing a policy that "prohibits unlawful discrimination" goes far beyond the offending conduct alleged. The Court therefore **ORDERS** the following permanent injunction, which is based on the U.S. Department of Justice ADA regulations and is narrowly tailored to the conduct described in this Order:

> Defendant Tim Nguyen, doing business as Pho 77 Vietnamese Noodle and Grill, must permit service dogs to accompany people with disabilities in all areas of the facility where the public is normally allowed to go, unless (a) the dog is creating a disturbance and the animal's handler does not take effective action to control it, or (b) the dog is not housebroken. When it is not obvious what service an animal provides, staff may ask only two questions: (1) is the dog a service animal required because of a disability; and (2) what work or task has the dog been trained to perform. Staff cannot ask about the person's disability, require medical documentation, require a special identification card or training documentation for the dog, or ask that the dog demonstrate its ability to perform the work or task.

See U.S. DOJ, ADA Requirements: Service Animals, https://www.ada.gov/resources/service-animals-2010-requirements/; see also Ascencio, 2014 WL 204212, at *11.

3. **Attorneys' Fees and Costs**

Plaintiff requests attorneys' fees in the amount of $6,000 for 13.6 hours of legal work, which comes to an hourly rate of $441.18. (Application at 8; Morin Decl. ¶ 13.) In this District, awards of attorneys' fees in default judgments are governed by Local Rule 55-3. See L.R. 55-3. Pursuant to L.R. 55-3, "[w]hen a promissory note, contract or applicable statute provides for the recovery of reasonable attorneys' fees" and the amount of judgment is over $100,000, the amount of attorneys' fees allowed is $300 plus 10% of the amount over $1,000. See id. Pursuant to 42 U.S.C. § 12205, a plaintiff who prevails on claims brought under the ADA may recover reasonable attorneys' fees and costs as determined by the court. Shawn Bedwell v. John Hampton, et al., 2023 WL 3103806, at *4 (S.D. Cal. Apr. 26, 2023); see 42 U.S.C. § 12205. As

held above, Plaintiff is entitled to a damages award of $8,000.  Therefore, Plaintiff is entitled to $1,000 in attorneys' fees pursuant to the Local Rule schedule.

L.R. 55-3 also permits attorneys claiming fees in excess of the schedule to request a different fee; the Court "shall hear the request and render judgment for such fee as the Court may deem reasonable."  L.R. 55-3.  Plaintiff requests $5,000 more than he is permitted under the L.R. 55-3.  Because awarding attorneys' fees based on the amount of damages "'would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts,'" the Court finds it appropriate to depart from the fee schedule.  See Love v. Voyles, No. EDCV 18-97 JGB (KKX), 2019 WL 3241184, at *6 (C.D. Cal. Mar. 14, 2019) (quoting City of Riverside v. Rivera, 477 U.S. 561, 578 (1986)).  The Court thus turns to evaluating whether the fees requested by Plaintiff are reasonable.

Courts generally apply the lodestar method to determine the reasonableness of requested attorneys' fees.  Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  The lodestar figure is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  Id.  The moving party has the burden to produce evidence that the rates and hours worked are reasonable.  See Intel Corp. v. Terabyte Int'l, 6 F.3d 614, 623 (9th Cir. 1983).  With regard to the reasonableness of a proposed hourly rate, "[t]he fee applicant bears the burden of producing satisfactory evidence that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  Brown v. Sonoma Cnty. Land Co., 2023 WL 2959993, at *3 (N.D. Cal. Apr. 14, 2023) (internal quotes omitted).  "Reasonable hours expended on a case are hours that are not 'excessive, redundant, or otherwise unnecessary.'"  Machowski v. Jacmar Partners III, 2021 WL 2980223, at *2 (C.D. Cal. May 27, 2021) (quoting McCown v. City of Fontana, 565 F.3d 1097, 1102 (9th Cir. 2009)).

"[I]n appropriate cases, the district court may adjust the 'presumptively reasonable' lodestar figure based upon the factors listed in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 69–70 (9th Cir. 1975)."  Id. at 622.  These factors include:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

Kerr, 526 F.2d at 70, abrogated on other grounds by City of Burlington v. Dague, 505 U.S. 557 (1992).

The Court finds that an hourly rate of $425, not $441.18, is reasonable and appropriate here. The billing statement submitted by counsel indicates that the billed-for-charges on this matter total $6,800 for 13.6 hours, but counsel only requests $6,000. (Morin Decl. ¶¶ 13–14; Exhibit 4.) The two attorneys who have worked on this matter—Richard Morin and Bryce Fick—have experience representing plaintiffs and defendants in disability rights and accessibility in public accommodations cases. (Morin Decl. ¶ 10; Fick Decl. ¶ 7.) Morin has been practicing for ten years and Fick for five; both attorneys normally charge $500 an hour for their work. (Morin Decl. ¶ 10; Fick Decl. ¶ 7; Exhibit 4.) Even so, courts have found $425 to be a reasonable hourly rate in similar cases in this District. See, e.g., Langer v. S. W. Med. Care Inc., 2018 WL 456131, at *4 (C.D. Cal. Jan. 17, 2018) ($425); Filardi, 2018 WL 3303316, at *6 (same).

The Court finds that the amount of time counsel expended on this case is largely reasonable, with a few minor adjustments. First, the Court reduces the numbers of hours billed for filing-related tasks from 1 hour to .5 hours. See Jones v. Islam, 2021 WL 3472860, at *8 (C.D. Cal. July 7, 2021) (reducing time billed for filing and simple pre-filing tasks). And because counsel will not be rewarded for failure to prosecute, the Court also reduces the total number of hours by .1, which is the amount of time counsel spent "review[ing] court order re non-prosecution." (Exhibit 4 at 5.) Thus, the Court **AWARDS** Plaintiff $5,525 in attorneys' fees.

Plaintiff also requests costs in the amount of $566.13 for court filing and service fees. A prevailing party may recover litigation costs under the ADA. See 42 U.S.C. § 12205. The Court finds that these fees are reasonable. See Love, 2019 WL 3241184, at *6 (approving $625 in fees in similar case). The Court therefore **AWARDS** Plaintiff $566.13 in costs.

***

In sum, the Court finds that Plaintiff is entitled to $8,000 in damages, $6,091.13 in attorneys' fees and costs, and a permanent injunction as described above, and **GRANTS** his requests for relief.

### IV.   CONCLUSION

For the reasons above, the Court **GRANTS** Plaintiff's Application and **VACATES** the October 2, 2023 hearing. Judgment shall be entered as follows:

1. Judgment is entered in favor of Plaintiff Curtis J. Barlows against Defendant Tim Nguyen, DBA Pho 77 Vietnamese Noodle and Grill.

2. Plaintiff is **AWARDED** $8,000 in monetary damages.

3. Plaintiff is **AWARDED** $6,091.13 in attorneys' fees and costs.

4. The Court **ENJOINS** Defendant as follows:

   Defendant Tim Nguyen, doing business as Pho 77 Vietnamese Noodle and Grill, must permit service dogs to accompany people with disabilities in all areas of the facility where the public is normally allowed to go, unless (a) the dog is creating a disturbance and the animal's handler does not take effective action to control it, or (b) the dog is not housebroken. When it is not obvious what service an animal provides, staff may ask only two questions: (1) is the dog a service animal required because of a disability; and (2) what work or task has the dog been trained to perform. Staff cannot ask about the person's disability, require medical documentation, require a special identification card or training documentation for the dog, or ask that the dog demonstrate its ability to perform the work or task.

5. The Clerk is directed to close the case.

**IT IS SO ORDERED.**